```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SUNHAM HOME FASHIONS, LLC,              :
                    Plaintiff,          :
                                        :
              -v-                       :      11 Civ. 372 (DLC)
                                        :
DIAMOND STATE INSURANCE COMPANY,        :        OPINION & ORDER
                    Defendant.          :
                                        :
---------------------------------------  :
                                        :
DIAMOND STATE INSURANCE COMPANY,        :
          Third-Party Plaintiff,        :
                                        :
              -v-                       :
                                        :
LUMBERMANS MUTUAL CASUALTY COMPANY      :
a/k/a LUMBERMANS MUTUAL GROUP a/k/a     :
KEMPER CASUALTY INSURANCE COMPANY,      :
                    Third-Party         :
Defendant.                              :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:
Eugene Killian, Jr.
The Killian Firm, P.C.
14 Wall Street, 20th Floor
New York, NY 10005

David A. Gauntlett
Robert Scott Lawrence
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, CA 92612

For Defendant:
Miranda Sambursky Slone
Sklarin Verveniotis, LLP
240 Mineola Blvd.
Mineola, NY 11501

For Third-Party Defendant:
Joseph DeDonato
Mark Hall
Morgan Melhuish Abrutyn
39 Broadway, Suite 1701
New York, NY 10006

DENISE COTE, District Judge:

    Plaintiff Sunham Home Fashions, LLC ("Sunham"), a textile manufacturer and designer, brings this action against its excess insurance carrier Diamond State Insurance Company ("Diamond") seeking reimbursement of the settlement amount paid in a copyright infringement action and recovery of its defense costs. Diamond in turn seeks indemnification from Sunham's primary insurer, Lumbermans Mutual Casualty Company ("Lumbermans"). This Opinion addresses the parties' cross-motions for summary judgment.

## BACKGROUND

    The Complaint asserts one cause of action against Diamond for a declaratory judgment. Sunham principally seeks a declaration that Diamond had a duty to defend it in an action for copyright infringement of certain quilt designs, and that Diamond must therefore reimburse Sunham for all attorneys' fees and settlement costs associated with the copyright infringement action. Diamond has filed a third-party complaint against Lumbermans (the "Third-Party Complaint") asserting two causes of

action for declaratory judgment and equitable subrogation. Diamond contends that as the primary insurer for Sunham, Lumbermans must indemnify Diamond to the extent that Diamond is found liable to Sunham for the costs of defending the infringement action.

The following facts are not in dispute.  On February 27, 2003, Pem-America, Inc. ("Pem-America") filed an action for copyright infringement against Sunham in the United States District Court for the Southern District of New York (hereinafter the "Velvet Garden action").[1]  Pem-America alleged that it was the owner of a copyright registration for a quilt design known as "Velvet Garden" and that Sunham had begun to sell quilts under the design names "Sage Garden" and "Canterbury" with patterns that were substantially similar in look and feel to the Velvet Garden design sold by Pem-America. The Velvet Garden complaint sought to enjoin Sunham from further sale of the "Sage Garden" and "Canterbury" designs; it also requested that the court require Sunham to "deliver up for disposition all 'Sage Garden' and 'Canterbury' quilts and related goods, and <u>all packaging, advertising and/or promotional materials that violate the Court's injunction</u>" (emphasis

---

[1] Sunham had previously filed two separate actions against Pem-America in the Southern District of New York, on August 7, 2002 and September 25, 2002, regarding alleged infringement of the "Anna" quilt design and the "Garden Ridge" quilt design.

supplied).  Attached to the complaint were three pages of photographs of Sunham's quilts.  The pages appear to be from catalogs advertising the quilts, although they were not identified as advertisements in the Velvet Garden complaint.

Lumbermans issued a commercial general liability policy to Sunham for the period October 20, 2002 to October 20, 2003.  The policy provided that Lumbermans will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies."  The policy defined "advertising injury" as follows:

> 'Advertising injury' means injury, other than 'bodily injury' or 'personal injury,' arising solely out of one or more of the following offenses committed in the course of 'your advertising activities':
> a. Misapropriation of advertising ideas;
> b. Infringement of copyrighted advertising materials;
> c. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or
> d. Oral or written publication of material that violates a person's right of privacy.

The policy provided that it did not apply to advertising injury "[a]rising out of actual or alleged infringement of patent, trademark, service mark, trade name, trade dress, trade secrets, or copyright, other than copyrighted advertising materials."  The Lumbermans policy also contained a so-called "voluntary payments" provision which provided that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any

4

obligation, or incur any expense, other than for first aid, without [Lumbermans'] consent."

Diamond issued an excess umbrella policy to Kam Hing Enterprises, Inc. for the term October 20, 2002 to October 20, 2003; Sunham was an additional named insured under this policy. The policy provided that Diamond had

> a duty to defend any 'claims' or 'suits' to which this insurance applies:
> (a) But which are not covered by any 'underlying insurance' . . . or
> (b) If the applicable limit of 'underlying insurance' is exhausted by the payment of claims to which this insurance applies;
> (c) However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal injury' or 'advertising injury' to which this insurance does not apply.

The Diamond policy defined "advertising injury" as follows:

> 'Advertising injury' means injury arising out of one or more of the following 'offenses':
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> b. Oral or written publication of material that violates a person's right of privacy;
> c. Misappropriation of advertising ideas or style of doing business; or
> d. Infringement of copyright, title or slogan.

The Diamond policy contained an exclusion for advertising injury "arising out of the infringement of patent, trademark or trade dress rights under any federal or state law." The Diamond policy had a "voluntary payments" provision which stated that "[n]o insureds will, except at that insured's own cost,

5

voluntarily make a payment, assume any obligation, or incur any expense without [Diamond's] consent."

Approximately six months after Pem-America sued Sunham in the Velvet Garden action, Lumbermans advised Sunham by letter of September 10, 2003 that it had concluded that it did not have a duty to defend or indemnify Sunham in the Velvet Garden action. Lumbermans reasoned that Sunham's policy only covered "advertising injury" and expressly excluded coverage for injury stemming from copyright infringement. On November 18, 2003, Sunham brought suit against Lumbermans in New York state court for a declaratory judgment that its insurance policy required Lumbermans to defend the Velvet Garden action. Lumbermans then reconsidered its coverage position and by letter of May 19, 2004 noted that "[b]ecause the 'Advertising Injury' coverage is potentially implicated," it would assume the costs of Sunham's defense in the Velvet Garden action. The May 19 letter contained a reservation of rights which stated that Lumbermans "does not intend to waive and shall not be estopped from ascertaining any other coverage defenses that may apply in this matter," including the defense that "the allegations of the complaint do not meet the definition of an 'Advertising Injury.'" Lumbermans and Sunham stipulated to the dismissal of the New York state court action without prejudice on June 4, 2004. Diamond issued a letter on June 24, 2004 reserving its

6

right to deny coverage on the basis that the underlying injury in the Velvet Garden action was not an "advertising injury."

On May 19, 2003, Nancy Lambert ("Lambert"), a former employee of Pem-America, filed an action in the Northern District of Illinois for a declaratory judgment that she was the owner of the copyright of the quilt designs implicated in the actions in the Southern District of New York.  On March 3, 2008, in the middle of trial in the Lambert case, Sunham, Pem-America, and Lambert reached a settlement.  As part of the settlement, Sunham agreed to pay $600,000 to Pem-America.  Sunham did not obtain the consent of either Diamond or Lumbermans before entering into the settlement with Pem-America and Lambert.

Sunham's attorney Richard Hubell forwarded the settlement agreement to Gerald Gross at Lumbermans by email of March 20, 2008.  Lumbermans advised Sunham on October 2, 2008 that it had no duty to reimburse Sunham for the $600,000 it paid in the settlement.  Lumbermans stated that the Velvet Garden action was not covered by Sunham's policy because it did not involve "advertising injury."  Lumbermans further noted that the settlement was undertaken without advance notice to Lumbermans or its written consent, in violation of the "voluntary payments" provision of the policy.

Sunham filed its Complaint against Diamond on January 19, 2011.  Sunham filed a motion for partial summary judgment

against Diamond on February 28, 2011.  On March 4, Diamond answered the Complaint and asserted a counterclaim against Sunham:  it sought a declaratory judgment that it had no duty to defend or indemnify Sunham in the Velvet Garden action.  On March 21, Diamond filed a Third-Party Complaint against Lumbermans, asserting that Lumbermans was obligated to indemnify Diamond to the extent that Diamond was found liable to Sunham. Diamond cross-moved for summary judgment against Sunham on May 20; Lumbermans moved for summary judgment against Diamond on June 27.  The motions were fully submitted on July 28.


                              DISCUSSION

     Sunham primarily contends that Diamond had a duty to defend it in the Velvet Garden action under the terms of the excess umbrella policy, and that therefore Diamond should reimburse it for the costs of the defense and the $600,000 settlement. Diamond argues that its excess policy only applies to the extent that the underlying Lumbermans' insurance policy applies; since Lumbermans has taken the position that it has no duty under its policy to defend Sunham, Diamond contends that it similarly has no duty.  Diamond further argues that even if the Lumbermans policy is held to cover the Velvet Garden action, the Diamond policy would not apply because it contains an exclusion for "advertising injury."  In addition, both Diamond and Lumbermans

                                  8

argue that Sunham violated the "voluntary payments" provision of their respective policies by failing to obtain their consent prior to entering into the settlement agreement.  Thus, Diamond and Lumbermans contend that they have no obligation to reimburse Sunham for the settlement amount even if their policies are found to apply.

Summary judgment is "'appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.'"  Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC, 2010 WL 5064377, at *4 (2d Cir. Dec. 9, 2010) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).  "The role of the court in deciding a motion for summary judgment 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'"  Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 59-60 (2d Cir. 2010) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986)).

On a motion for summary judgment in a contract case the court must first answer the question of "whether the contract is unambiguous with respect to the question disputed by the parties."  International Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002).  The threshold

question of ambiguity is a matter of law for the court to decide.  Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010).

The parties do not argue that the law of a state other than New York should apply here, and the Second Circuit has held that "where the parties agree that New York law controls, this is sufficient to establish choice of law."  Federal Ins. Co. v. American Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011). Under New York law, an

> ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

Id. (emphasis supplied and citation omitted).

> No ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion. Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is reasonable interpretation.  Thus, the court should not find the contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning.

Id. at 467 (citation omitted).  Further, to determine whether disputed contract language is ambiguous, the Court must ask

10

whether it is "ambiguous when read in the context of the entire agreement; [] where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity."  Id. (citation omitted).

I.  Coverage Under Lumbermans' Policy

The language of the Lumbermans policy unambiguously excludes coverage for the type of injury alleged in the Velvet Garden action.  The injury alleged in the Velvet Garden action did not involve the misappropriation of an advertising concept or an infringement of Pem-America's copyrighted advertising materials, as required to constitute an "advertising injury" under the terms of the Lumbermans policy.  Rather, the alleged infringement fundamentally concerned the misappropriation of Pem-America's quilt designs -- Pem-America claimed that Sunham had copied its Velvet Garden quilt design and was selling the design under the names Sage Garden and Canterbury.  Pem-America did not allege that Sunham had used Pem-America's copyright-protected advertising materials in connection with the marketing of the quilt design.

Moreover, the Lumbermans policy contained an express exclusion for advertising injury "[a]rising out of actual or alleged infringement of . . . copyright, other than copyrighted advertising materials."  As Lumbermans notes, if an action for

11

copyright infringement could be turned into an "advertising injury" for the purposes of the insurance policy simply by the mention of advertising materials or the inclusion of an advertisement as evidence of the underlying infringement, the policy's exclusion for copyright infringement would be rendered meaningless.  It is clear from the context of the entire policy that it was intended to cover infringement of advertising concepts, and not copyright infringement more generally.

Sunham offers two main reasons that the injury alleged in the Velvet Garden action was an "advertising injury" under its Lumbermans policy:  first, because Pem-America sought relief in the form of an order requiring Sunham to "deliver up for disposition all 'Sage Garden' and 'Canterbury' quilts and related goods, and all packaging, advertising and/or promotional materials that violate the Court's injunction"; and second, because attached to the Velvet Garden complaint were pages of a catalog advertising Sunham's quilts.  Neither of these is sufficient to create an "advertising injury" under the terms of the Lubermans policy.  Simply because Pem-America requested that Sunham stop advertising its quilts as part of the relief demanded in the complaint does not mean that the injury alleged by Pem-America was the infringement of an advertising idea.  And, as Lumbermans notes, the pages attached to the complaint were clearly meant as evidence that Sunham was selling the

12

particular quilt design at issue, and not intended to suggest that Sunham was infringing on Pem-America's advertisements for the quilts. Thus, the Lumbermans policy does not cover the injury alleged in the Velvet Garden action because it is not an "advertising injury."

Moreover, even if the Velvet Garden injury was characterized as an "advertising injury" for purposes of the Lumbermans policy, Lumbermans would have no obligation to reimburse Sunham for the settlement amount because Sunham violated the voluntary payments provision of the policy. Sunham has not shown that it made any attempt to notify Lumbermans or obtain its consent prior to entering into the settlement with Pem-America and Lambert. Accordingly, Lumbermans does not have a duty to reimburse Sunham for the settlement amount.

II. Coverage Under Diamond's Policy

Sunham also violated the voluntary payments provision of the Diamond policy by failing to obtain Diamond's consent prior to entering into the settlement. Accordingly, Diamond does not have a duty to reimburse Sunham for its defense costs associated with the Velvet Garden action. Because of this violation, it is unnecessary to address the parties' arguments about the definition of "advertising injury" in the Diamond policy, and

the significance of any difference in that definition from that contained in the Lumbermans policy.

## CONCLUSION

Sunham's February 28, 2011 motion for partial summary judgment is denied. Diamond's May 20, 2011 cross motion for summary judgment is granted in part. Lumbermans' June 27, 2011 motion for summary judgment is granted. The Clerk of Court shall enter judgment for Diamond and Lumbermans and close the case.

SO ORDERED:

Dated:   New York, New York
         August 29, 2011

_____
            DENISE COTE
       United States District Judge